Your argument, McDonald v. Adamson. Ms. Schrupp. May it please the Court, I'm Sarah Schrupp from Northwestern Pritzker School of Law and I represent the Plaintiff Appellant Donald McDonald. This Court should reverse and remand to the District Court. And I just want to make a few brief points here in my argument today. First, with respect to the race judicata question, the defendants concede that the Illinois Court of Claims could not, and thus did not, decide Mr. McDonald's constitutional claims. Therefore, and as a result, the District Court erred in giving the Illinois Court of Claims order race judicata effect and dismissing Mr. McDonald's 1983 complaint on that basis. Because both parties seemingly agree that the race judicata issue, the sole basis of the District Court's decision below, was wrongly decided, this Court doesn't need to go any further to reverse and remand. But, I just want to briefly touch on the defendant's new claim on appeal here that the Friday prayer issue is moot. The defendants can't prevail on the record here in this Court because, as is clear from this Court's cases and the Supreme Court's cases, the defendants bear an extremely heavy burden in showing mootness when it results from voluntary cessation. It must be absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur. So, mere cessation is not enough under this Court's cases in Siapaglini, nor is, they must make some showing that it's a part of a broader policy and they must show that it's permanent. Defendants don't meet that heavy burden here. They provide only a thank you note from McDonald about Friday prayer and a very brief three sentence affidavit from Chaplain Adamson. And in that, the chaplain doesn't identify that, what the policy was before, whether there had been a policy change as required by this case, whether it was permanent, ad hoc, or temporary. What would happen if there's a new warden in place? And all of these things go to their burden and they're simply not met here. So, this Court should not hold that the Friday prayer issue is moot. Finally, I just want to turn briefly to the collateral estoppel issue because they do focus on that quite a bit on appeal and that issue is not properly before this Court. It wasn't argued, though, was it? I beg your pardon? That wasn't argued, right? Below. No, Your Honor, no. That's what I'm saying. Right, exactly. No, they didn't raise a collateral estoppel affirmative defense. The district court never addressed collateral estoppel. And we pointed out in a reply brief that given everything and sort of the concessions in this brief, in the defendant's brief, that it actually makes sense. It would be efficient and fair to just send everything back down and go ahead and let this case unfold on a clean slate where, you know, McDonald can amend. They can raise whatever affirmative defenses they have. We'll have discovery. And it'll proceed as it should have but did not before. I don't know if this Court has any other questions about the collateral estoppel issues that we sort of went back and forth on the briefs. I'm happy to answer any questions about it. And I suppose I'd like to make just one point to the extent the Court wants to consider it. The collateral estoppel affirmative defense needed under this Court's cases in Walker v. Thompson and other cases to be certain and unmistakable on the face of Mr. McDonald's complaint. But it was decidedly not on the face of Mr. McDonald's complaint. He only mentioned the fact that his claims had been brought in the ICC. But as we all recognize, those claims can't be subject of race judicata. But he mentioned nothing about fact-finding or the Illinois Court of Claims proceedings at all. He didn't attach to his complaint the ICC order or his ICC complaint. Those came into the case as attachments to the defendant's motion to dismiss. Is there anything about wife out there in the first place?  Was it because he couldn't get it somewhere else? I beg your pardon? Was it because it was the only available place or something? No, I don't know why he did that. Well, maybe you'll tell us. Yeah. But in any event, just like the defendants who didn't raise this below and the district court that didn't address it, the collateral estoppel offense needed to be unmistakable and clear on the face of his complaint, and it just wasn't. So unless this court has other questions, I would just ask this court to reverse and remand. Okay. Thank you, Ms. Schultz. Thank you, Your Honor. Mr. Bischoff? May it please the court? My name is Frank Bischoff, and I represent the defendants. This court should affirm the dismissal of plaintiff's claims, Section 1983 claims, as to Friday prayer, confiscated cassette tapes, and stolen prayer rugs because the court of claims has already resolved the factual issues underlying those claims and plaintiff is therefore barred from relitigating those claims in this action by the doctrine of issue preclusion. But aside from issue preclusion, this court should also dismiss plaintiff's Friday prayer claim because that claim is moot. There's no dispute that plaintiff and all Muslim inmates at Stateville have been allowed to attend weekly prayer since at least January 2016. So in his injunctive claim, he is asking defendants to do what they already are doing and have been doing for the previous eight months. But even aside from mootness, the Friday prayer cassette tape and stolen prayer rug claims are all barred by the doctrine of issue preclusion. Counsel spoke during her initial argument about whether or not this issue is forfeited because the district court relied on claim preclusion in its decision. But the applicability of issue preclusion as well as the applicability of issue preclusion was clear from the face of the complaint and the district court in issuing her decision did specifically decide that the court of claims decided the factual issues that were before it which were the same underlying factual issues in this action. In addition, plaintiffs did address the issue of issue preclusion in their opening brief and so there's no prejudice to plaintiff. Could a plaintiff have appealed that court of claims decision within the Illinois court system? Yes, plaintiff could have appealed the decision as to whether or not the procedures complied with due process in a common law writ of certiorari. But could he have also raised issues about whether his prayer rugs were stolen or whether he didn't get to go to these Muslim services every week and so on? He could not have appealed the merits of the underlying decision. Why is that? That's because the Illinois Supreme Court has held that review of a court of claims decision or a court of claims decision can be reviewed only to determine whether or not the underlying proceedings complied with due process because the whole court of claims system is essentially an exception to sovereign immunity and the court of claims is an extension of the legislature that just processes claims that are before it. So under Illinois law, a plaintiff, it's true, couldn't have appealed the merits of the underlying decision but he could if he believed that the proceedings were unfair in any way. He could have sought judicial review of the fairness of the proceedings. Couldn't he bring a federal suit arguing that his First Amendment religious rights had been infringed? He could have brought that in the first instance, Your Honor. He went to the court of claims first, I believe, because in his court of claims complaint he was seeking damages and so I believe that's why he went the court of claims route. Just for injunction? Now he's seeking just injunctive relief. Well, it should have been filed there in the first place. I guess that's my problem. In the court of claims? Yeah. No, it really shouldn't have because... And then as far as issue preclusion and going on with the collateral estoppel, those really weren't pushed. You talk about res judicata and that's it. Correct. And then there's a pretty superficial analysis. I mean, it does seem pretty shallow what we got here. Well, a plaintiff did get the opportunity. He did litigate these claims before the court of claims. He just goofed it up. He had an opportunity and flubbed it, I guess. Is that all you're saying? Well, issue preclusion looks to whether or not there was a decision as to these issues. And here there has been a decision as to these issues. The court of claims decided these factual issues in rendering its decision. The court of claims proceedings are against those of a judicial proceeding. They follow the same civil practice rules. Is that a regular judge? I don't know. Who sits in the court of claims and makes decisions? It's a panel of, I believe, five court of claims judges. It's a panel. I mean, it's not a judicial court under Article VI. I mean, they may be lay people or something, aren't they? No, I'm not. Are they all lawyers? I can't say. I don't know. I'm not 100% sure. The title of the people who sit on it is judge. Judges of the court of claims. Yes. And they're appointed by the? I believe they're appointed by the governor, Your Honor. They're appointed by the governor with the advice and consent of the Senate. Right. And the House.  And their proceedings are, again, subject to the same procedural rules and protections as a judicial court. And not only is there the ability to obtain re-hearing through a petitioner for re-hearing, the fairness of the proceedings themselves are subject to So, therefore, there is a? His brief says that he didn't press all possible constitutional claims in his court of claims proceeding. He couldn't because they wouldn't have had authority to rule on those. Correct. So why wouldn't that allow him to file a federal constitutional case? Well, he can to the extent that he's relying on any facts that have not already been resolved by the court of claims. Well, he says the court of claims didn't resolve some of the facts, some of the issues because he didn't present them to the court of claims. Right. Could the court of claims have held that his religious rights had been infringed? The court of claims could have made a decision under whether or not the state had complied with the Illinois Administrative Code. And defendants agree that the claims other than the Friday prayer cassette tape and prayer rug claims weren't presented before the court of claims and, therefore, those should go back. But the court of claims did decide those three issues. And, therefore, the claims which rely on those three factual issues are barred by issue preclusion in this proceeding. But does he have any claims that aren't, that weren't before the court of claims? Oh, yes. Yeah, he raises claims about whether the defendants were allowing other inmates to steal food that were dedicated to Muslim inmates, about whether or not they're providing halal meals, about the number of Muslim inmates allowed to volunteer in the chapel department. About what? I'm sorry. After them stealing the Muslim meals? What was the next? Oh, the number of Muslim inmates allowed to volunteer in the chapel department, whether or not they're allowed to clean the area in which they conduct Friday prayers, and that Muslim events are often canceled for Christian events. So those issues are all new issues that weren't raised before the court of claims, and defendants admit in our brief that those go back because the court of claims hasn't decided those issues. But the claims that the court of claims has decided, which are the Friday prayer cassette tape and stolen prayer rug issues, those are barred by issue preclusion. Okay. So you're conceding he has some scope for further. Yes, yes. Some of these claims are going back. That's true, Your Honor. But this is the focus on the three claims that were decided by the court of claims because he had the opportunity to litigate before the court of claims. That body made a decision as to these factual issues, and, therefore, this court should affirm the dismissal of those claims on issue preclusion grounds. So unless, Your Honors, you have any further questions. Okay. Thank you, Mr. Bischoff. Thank you. Ms. Schrapp, do you have anything further? Yes, Your Honors. Just one brief point on collateral estoppel. As a threshold matter, they didn't raise it below. It's not properly before this court. But if this court dives in, it's important to recognize the procedural posture that this is up before this court. Given the limited factual universe that should have been taken in McDonald's favor, it's clear that the defendants could not have met, can't meet their burden of showing the collateral estoppel affirmative defense in this court, and I'm going to give you an example. As a threshold matter, this court has to first run through the Buckhalter test. Defendant's counsel referenced it. They bear the burden of showing those. But because of this limited record, there are only a few facts in the record that even speak to it at all. We don't have anything from the Illinois Court of Claims proceedings, no transcripts, no recordings, no affidavits. All we know is what's in McDonald's complaint. What are you seeking now? I'm just asking this court to send everything back down and let the whole case. And then what? And then let him amend. Let them raise whatever affirmative defense is, if they still have them. And let the case go the way it should have from the beginning. So given the burdens here and what they were obligated to show, all we have is McDonald's statement that he sought discovery and was denied discovery. We know that he could not appeal this on the merits. And all of these questions fundamentally go to the question of whether issue preclusion is appropriate because the body that was considering these things maybe wasn't acting in a judicial capacity in this instance. And I do want to point out that their insistence that the mere technical of it. Why did he go to the Court of Claims? I've never actually seen an Illinois Court of Claims case before. You know, I don't know exactly why he went. You didn't. You weren't advising him at that time. I was not, Your Honor. I'm sure. But what we do know is that it's not just the mere technical availability, the fact that there are rules in place. It's whether they're used in this case. Buckhalter says that in the cases that this court cites in Buckhalter, if you trace it back. It's always whether the procedures were available to that litigant in that specific procedure. And you look at each case individually. And here, they don't have any information about what happened below. It could have been a five-minute rush job hearing. I mean, he did say there was a hearing, but we know nothing about what happened. So they bear that threshold burden. They can't meet it here. And they also can't show that they conceded that they can't show that Illinois courts would give preclusive effect to an Illinois Court of Claims proceeding, which is the second step you need to get to before you even get to the collateral estoppel test, whether they decided it on the merits themselves. Currently speaking, can the Court of Claims enter any order other than monetary? Damages. No, just damages. What can they do? They didn't. No. Could they have entered any order directing the penitentiaries to do anything, or could they only enter a monetary judgment? My understanding, Your Honor, and I hope I'm not mistaken about this, is that it's only for monetary relief toward claims against them. And that monetary can only be enforced by an act of the legislature. It's a legislative. Yes. The answer is yes? Yes. Okay. If there are no further questions, we ask you to remand. Thank you very much. Thank you to both. Okay, next case.